# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION


VICKIE FIELDS,                    )

                             )

                Plaintiff,      )

                             )

                v.           )       No. 07-4136-CV-C-MJW

                             )

BILL ABBOTT, Sheriff of Miller County,   )

Missouri, Individually and in his Official    )

Capacity, et al.,                  )

                             )

                Defendants.     )

## **ORDER**

Defendants Archetype Design Group, Inc., Wright County, Wright County Sheriff Terry Gates, Miller County, Miller County Sheriff Bill Abbott, Johnny Klindt, David Whittle, and Tom Wright have filed motions for summary judgment on the claims made against them by plaintiff Vickie Fields (hereinafter "Fields"). Fields opposes the motions.

Fields' complaint has four Counts. Count I is a substantive due process claim against Miller County and Miller County defendants Sheriff Bill Abbott, Johnny Klindt, David Whittle and Tom Wright. Count II is a negligence claim against defendant Archetype Design Group, Inc. Count III is a negligence claim against Wright County and Wright County Sheriff Terry Gates. Count IV is a substantive due process claim against Wright County and Sheriff Gates. Fields' claims arise from an incident which occurred on July 21, 2004, at the Miller County Jail in Tuscumbia, Missouri. Fields was a jailer at the Miller County Jail. While working as jailer, two Miller County inmates overpowered her, taking her hostage for approximately two hours. Fields suffered injuries as a result of the incident.

### **Facts**

In 2004, Fields was working as a jailer for Miller County at the Miller County Jail in Tuscumbia, Missouri.

On July 10, 2004, Lawrence Arnold was brought to the Wright County Jail by the Missouri Highway Patrol on an outstanding arrest warrant issued by the Missouri Board of

Probation and Parole. This warrant stated that Arnold was charged with violating the conditions of his parole by failing to report as directed and failing to participate in substance abuse treatment. The warrant reflected Arnold's original charge of murder in the second degree. Arnold's booking report at Wright County shows he was charged with parole violation, as well as felony possession of a controlled substance and unlawful use of a weapon. Arnold remained incarcerated at the Wright County Jail until July 13, 2004. While at the Wright County Jail, Arnold was not involved in any altercations with other inmates or the jail staff. On July 13, 2004, at 7:30 p.m., Arnold was transferred to the Miller County Jail, where his booking sheet also reflected these same charges. Arnold did not cause any problems while he was in the Wright County Jail in July 2004, or during his transfer to Miller County on July 13, 2004.

In July 2004, Wright County Jail had only six cells with 18 beds. Sheriff Gates believed that the jail, which was built in 1965, should be closed down because of safety and health concerns. Because of the poor condition of the jail, Sheriff Gates tried to have as few individuals as possible incarcerated in the jail facility. Wright County inmates were frequently transferred to Miller County for further holding and processing. When transferring inmates to the Miller County Jail, the jail's paperwork on the inmate was faxed to Miller County or hand-delivered with the inmate.

On July 14, 2004, John Reynolds was brought to the Miller County Jail on parole violation charges. He was not a Wright County prisoner at any time. The Miller County booking reports read that Reynolds' charges were for parole violation and criminal nonsupport.

The booking sheets at the Miller County Jail for inmates Reynolds and Arnold did not reflect what the original charges were on their parole violation charges.

On July 21, 2004, Fields and one other jailer, Freeman, were the only jailers working at the jail. Miller County inmates Reynolds and Arnold requested to go to the law library, and Fields moved both inmates from their cells and placed them in the drunk-tank cell, which was serving as the law library at the time. The law library consisted of a stack of legal books kept on a roller cart. Fields did not place either inmate in handcuffs when moving them from their cells to the drunk tank. Fields states that the normal procedures were that inmates weren't handcuffed when being moved within the jail. Fields had never seen two inmates placed in the drunk-tank

cell together before, and wasn't aware of what the jail's practice was in this regard. Fields states the inmates had told her one of them was the jailhouse lawyer for the other, so she thought she would be required to let them go to the law library together, pursuant to the jail's policy ensuring inmates' access to the law library and giving inmates the right to assist each other regarding legal issues.

While Reynolds and Arnold were in the drunk tank, inmate Reynolds asked Fields for a drink of water and to use the restroom. Fields' intention was to let Reynolds out of the drunk tank to use the restroom and get a drink of water. Fields keyed the door and it opened, at which time Reynolds and Arnold took hold of the door handle and pulled it back. This pulled Fields off balance. Reynolds and Arnold then got the drunk-tank cell door open and overpowered Fields. Inmate Arnold placed a handcuff on Fields right wrist. Inmate Reynolds held a pen to Fields' neck.

Prior to opening the drunk-tank cell door, Fields viewed Reynolds and Arnold standing near the middle of cell. Fields did not give any orders to the inmates regarding where to stand when she began to open the door. Fields admits that ordering inmates away from a cell door prior to opening it was discussed in the 40-hour basic training course for jailers. Fields states however, that this was not the practice at the Miller County Jail, and that Reynolds and Arnold, while not at the back of the cell, were not at the cell door necessitating her to order them away from the door.

Fields was held hostage by Reynolds and Arnold for approximately two hours and suffered serious injuries as a result of the incident. The only other jailer working at the jail on the evening of July 21, 2004, Freeman, was also severely injured by the escaped inmates.

When this incident occurred, Fields had recently returned from recuperating from her prior injury caused in February 2004 at the Miller County Jail. Fields had been injured by the same drunk-tank door just a few months prior to the incident in this case when an inmate used the handle to gain control of the door. An inmate attempting to commit suicide grabbed the inside handle on the door to the drunk tank and pulled the door in on Fields. This happened twice; the first time the inmate caught Fields' hand and the second time, he caught her neck.

**Claims**

Section 1983 Substantive Due Process Claims

Fields alleges constitutional substantive due process violations, claiming Wright County and Sheriff Terry Gates, as well as Miller County and Miller County defendants Sheriff Bill Abbott and County Commissioners Johnny Klindt, David Whittle, and Tom Wright, violated her due process rights protected by the Fourteenth Amendment. Fields brings her claims of constitutional violations under 42 U.S.C. § 1983. Section 1983 requires that Fields "prove the (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." Hart v. City of Little Rock, 432 F.3d 801, 804 (8th Cir. 2005).

*(A) Are defendants state actors who can be held liable under section 1983?* Defendants, being county/state jail facilities and the sheriffs and county commissioners of these facilities, are state actors for purposes of section 1983. See Monell v. Department of Soc. Servs., 436 U.S. 658, 690 (1978) (municipalities and other local governmental units and their governing officers are included among those to which section 1983 applies). However, liability of a county under section 1983 cannot be premised merely on the fact that it employs a tort-feasor or tort-feasors; in other words, section 1983 liability against a local governmental unit cannot be based upon a respondeat superior theory. Id. at 691. In order to establish liability of a county under Monell, the plaintiff must establish that "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." Id. at 694. See also St. Louis v. Praprotnik, 485 U.S. 112 (1988); Jett v. Dallas Indep. School Dist., 491 U.S. 701 (1989). Here, Fields' claims sufficiently allege that the customs and policies of Miller and Wright Counties, as established and/or executed by the named county defendants, resulted in her being injured.

*(B) Did defendants violate plaintiff's constitutional rights with the requisite culpability?* Generally, state actors are only liable under the Constitution's Due Process Clause for their own acts. This means that, typically, persons do not have a constitutional right under the Fourteenth Amendment Due Process Clause to be protected from the criminal acts of third parties. See DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195 (1989) (stating that

"nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."). Rather, the Due Process Clause is generally a protection to citizens from the actions of the state. However, there are two recognized exceptions to the rule: (1) the special relationship doctrine; and (2) the "state-created danger" theory. <u>Hart</u>, 432 F.3d at 805. A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to the individual (e.g., when the individual is a prisoner or involuntary committed mental patient). <u>See</u> <u>DeShaney</u>, 489 U.S. at 198-200. The special relationship theory is inapplicable to the instant case because Fields was simply an employee of Miller County, and an employment relationship is consensual. Fields argues, however, that the state-created danger exception applies to her claims for relief.

Substantive Due Process Claims against Miller County Defendants

Although a government employer, like Miller County, owes no constitutional obligation to provide its employees with minimum levels of safety and security in the workplace, <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 126-27 (1992), the facts suggest that Miller County defendants could be found liable by a reasonable jury under the "state-created danger" exception. "If the state acts affirmatively to place someone in a position of danger that he or she would not otherwise have faced, the state actor, depending on his or her state of mind, may have committed a constitutional tort." <u>Hart</u>,432 F.3d at 805. <u>See also</u> <u>Uhlrig v. Harder</u>, 64 F.3d 567, 572 (10th Cir. 1995) (The "state-created danger" theory of liability is applicable when the government's actions make the plaintiff more vulnerable to danger); <u>Bright v. Westmoreland County</u>, 443 F.3d 276, 281 (3rd Cir. 2006).

The elements required to support a state-created danger theory of liability are set forth in <u>Hart</u>, 432 F.3d at 804. Those elements are: (1) Fields was a member of a limited, precisely definable group; (2) Miller County defendants' actions put her at significant risk of serious, immediate harm; (3) the risk was obvious or known to Miller County defendants; (4) Miller County defendants acted recklessly in conscious disregard of the risk, and (5) in total, Miller County defendants' conduct shocks the conscience. <u>Id.</u>

As a jailer at the Miller County jail, plaintiff was a member of a limited precisely definable group.

The evidence shows the known and obvious conditions of the Miller County Jail included a door handle on the inside (inmate side) of the drunk-tank cell door, allowing inmates to gain control of the door when opened; a significantly understaffed jail, leaving jailers more vulnerable to being overpowered or injured by the jail's inmates; and a lack of a classification system for the jail's inmates, thereby providing no information to jailers regarding an inmate's criminal history and propensity for violence or escape.

Specifically, as to the drunk-tank door handle, the evidence shows that Miller County defendants were aware that the interior-mounted cell door handle allowed an inmate to gain control of the door from the inside of the cell, and that this was likely to lead to injury of a jailer. Fields had been injured by the same drunk-tank door just a few months prior to the incident in this case when an inmate used the handle to gain control of the door. An inmate attempting to commit suicide grabbed the inside handle on the door to the drunk tank and pulled it in on Fields. This happened twice; the first time the inmate caught Fields' hand, and the second time he caught her neck. Miller County defendants also were told by Fields and other jailers regarding concerns with the interior handle on the cell door.

The evidence is also sufficient for a reasonable jury to find that Miller County defendants knew the risk involved with their custom which discouraged jailers from accessing the criminal history information of the inmates in the jail, or otherwise classifying the inmates. Fields states that when she tried to implement a classification system for the inmates by running criminal histories on the jail's inmates, as taught during her recent attendance at a training, and as was required by the jail's official policy, she was specifically told by her supervisors she was not to run criminal histories on the inmates. Based on the evidence, a reasonable jury could find that Miller County defendants knew that without criminal history information or a classification system, jailers were at risk from inmates who had a criminal history of violence, because jailers could not modify their actions according to the threat level of the inmates. Fields points out that had she known the two inmates who assaulted her had serious, violent criminal histories, beyond that of ordinary Miller County inmates, specifically murder convictions, she would not have

followed the jail's custom of not handcuffing inmates when transporting them outside their cells within the jail, and would not have allowed them to review the law library materials in the drunk-tank cell together.

Finally, the evidence shows that Miller County defendants also knew the jail was greatly understaffed. This evidence supports a reasonable inference that the County knew its lack of staffing left too few jailers with too many inmates, making the jailers more vulnerable to the assaults of inmates. The facts suggest that the jail was knowingly understaffed at about fifty percent, and that both state authorities, such as the Missouri Department of Corrections, and federal authorities, such as the United States Marshal's Service and INS, had previously advised Miller County officials of the concerns with Miller County Jail's understaffing. As a result of such understaffing, some agencies refused to house inmates at the Miller County Jail.

This evidence can also support a reasonable jury's determination that Miller County defendants acted recklessly in conscious disregard of the known and obvious significant risks; acting with deliberate indifference. Deliberate indifference is defined by the Supreme Court for purposes of the Eighth Amendment as when an official is aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he draws the inference. Hart, 432 F.3d at 806 (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). While defendants may not have been intentionally taking actions that would injure Fields, they were aware of the facts that showed there was a serious risk of harm to Fields and other Miller County jailers. The actions of Miller County defendants in affirmatively placing Fields and other Miller County jailers in these types of jail conditions, to which the jailers would not have otherwise been exposed, could support a reasonable jury's finding that the defendants' actions were done with deliberate indifference. See id. at 806.

Whether Miller County defendants' conduct is conscious-shocking is a close question. However, deliberate indifference an intermediate level of culpability can satisfy the substantive due process threshold if the state actor acted under circumstances in which actual deliberation was practical. Id. Here, as set forth above, numerous other law enforcement agencies had expressed concern that the jail was significantly understaffed, and at least one agency refused to house its inmates at the jail as a result. The evidence also supports an inference that housing a

7

large number of inmates with low staffing was motivated by significant profits being made by the Miller County Jail in housing inmates for other law enforcement agencies. Finally, despite clear evidence that the jail was on notice that Fields had been injured by the drunk-tank cell door in February 2004, and that complaints had been made by Fields and others regarding the interior handle on the cell door being dangerous, the interior door handle remained in the drunk tank in July 2004, when this incident occurred.

Based on the evidence, this is a close case. Mere negligence can never be conscious-shocking. Id. at 805. But here, giving the plaintiff the benefit of all inferences, this court finds the evidence supports that the actions of Miller County defendants went beyond negligence, and that a reasonable jury could find Miller County defendants acted with conscious-shocking deliberate indifference, resulting in plaintiff being taken hostage by jail inmates for two hours, and in her sustaining serious injuries. This case is similar to the Ninth Circuit case of L.W. v. Grubbs, 974 F.2d 119 (9th Cir. 1992), where the court found that the danger-creation exception applied to claims of a prison nurse who was raped after the prison assigned her to work with a known violent sex offender who had failed all treatment programs and was considered very likely to commit a violent crime if placed alone with a female. The issue of Miller County defendants' liability under the substantive due process rights of the Fourteenth Amendment is better left for the jury.

<u>Substantive Due Process Claims against Wright County Defendants</u>

Fields claims that Wright County and Sheriff Gates violated her substantive due process rights under the Fourteenth Amendment when a Wright County inmate, Lawrence Arnold, was transferred to Miller County, and thereafter, assaulted her. Fields claims that Wright County defendants are liable under the state-created danger exception.

As set forth above, in order to support a due process claim under the state-created danger exception, Fields must show that: (1) she was a member of a limited, precisely definable group; (2) Wright County defendants' actions put her at significant risk of serious, immediate harm; (3) the risk was obvious or known to Wright County defendants; (4) Wright County defendants acted recklessly in conscious disregard of the risk, and (5) in total, Wright County defendants' conduct shocks the conscience. Hart, 432 F.3d at 804.

Again, Fields, a jailer at the Miller County jail, is a member of a precisely definable group. However, Fields has not come forward with sufficient evidence to support the remaining elements.

There is insufficient evidence to support Fields' claims that Wright County intentionally transferred its most dangerous or violent inmates to Miller County without the proper booking paperwork, thereby creating a substantial risk of serious harm to herself and other Miller County jailers, to which Wright County was deliberately indifferent. Rather, the evidence shows that Wright County Jail transferred inmate Arnold to the Miller County Jail as a part of its regular custom and policy, given the extremely poor conditions of the Wright County Jail. The Wright County Jail was in such poor condition that Sheriff Gates believed it should be shut down, and ordered his jailers to keep inmate numbers at minimum, transferring inmates to Miller County Jail when possible. The evidence shows there was no set criteria for deciding which inmates to transfer from Wright County, and the determination of which inmates were to be transferred was dependent on many different factors, including court schedules, an inmate's medical needs, an inmate's need to meet with a lawyer or family member, whether the inmate was a female, and on some occasions, if two inmates needed to be separated. The evidence shows the main reason for transfers from Wright County Jail to Miller County Jail was the poor conditions of the jail facility and resulting limitations and overcrowding of the Wright County Jail.

The evidence is that inmate Arnold was on parole when arrested, and was arrested on an outstanding warrant charging him with violating the conditions of his parole by failing to report as directed and failing to participate in substance abuse treatment. Arnold was also booked into the Wright County Jail with additional charges pending against him for felon in possession of a controlled substance and unlawful use of a weapon. While at the Wright County Jail, Arnold was not classified in any way as a dangerous inmate, did not cause any problems for jail staff, nor was there any concern during his transport from Wright County to Miller County on July 13, 2004. Thus, Wright County had no basis for believing Arnold posed a serious risk of harm to its jailers or Fields and the other jailers of Miller County. As far as paperwork is concerned, the evidence shows the practice of the Wright County Jail when transferring inmates to Miller County was to fax inmate booking sheets and related paperwork, including medical information

and any warrants, to Miller County prior to transfer, or to hand deliver such information at the time of the transfer. Inmate Arnold's booking sheet clearly reflected the basis for the parole violation warrant, and noted his original second degree murder charge and his pending charges. The evidence does not support a finding that Wright County was intentionally transferring its most dangerous inmates without sufficient paperwork to Miller County as a way of passing on the greater-security and safety-risk inmates to Miller County without Miller County's knowledge.

A reasonable jury could not conclude that Wright County's actions in transferring inmate Arnold to Miller County, who was on parole on an original charge of murder, would pose a significant risk of injury to Fields and jailers at the Miller County Jail. Wright County had no basis for believing that Miller County jailers would be at serious risk of harm. The mere transferring of an inmate between jails who has a criminal history which includes violence is fairly unremarkable. There is insufficient evidence that Wright County in any way placed plaintiff in a position of danger or knew of any safety and security deficiencies at the Miller County Jail. Fields has failed to come forward with evidence from which a reasonable jury could conclude that the actions of Wright County and Sheriff Gates in transferring inmate Arnold from the Wright County Jail to the Miller County Jail were deliberately indifferent to the safety and security of Fields, or were in any way conscious-shocking. Fields' claims do not fall under the state-created danger doctrine, and the Supreme Court's pronouncements in DeShaney are controlling: failure to protect from private party does not constitute a constitutional violation. 489 U.S. at 195. Wright County is entitled to summary judgment on Fields' substantive due process claims.

Qualified Immunity and Miller County Defendants

Qualified immunity is an affirmative defense that shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In considering whether qualified immunity shields Miller County, the court must consider the evidence in the light most favorable to Fields. As with summary judgment, the court is required to make all reasonable inferences in favor of the nonmoving party. The defendant bears the burden of pleading the

defense, but the plaintiff bears the burden of showing the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct. The ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity.

In Saucier v. Katz, 533 U.S. 194 (2001), the Court set forth a two-part analysis to be used when determining whether defendants are entitled to qualified immunity. Although the Supreme Court has said that the Saucier two-part analysis is not mandatory, it remains helpful in analyzing qualified immunity claims. Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808 (2009). At step one, the court determines whether the facts alleged show the defendants' conduct violated a constitutional right. Saucier, 533 U.S. at 201. The next step is to ask whether the right was clearly established in light of the specific context of the case. Id. The Court goes on to explain that "[t]he question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." Id. at 208.

Here, the Eighth Circuit's application of the state-created danger exception to liability when a government employee is suing the government for injuries he or she received from a third party was not specifically established until 2005 when the court issued an opinion in the case of Hart, 432 F.3d 801. However, to be clearly established, there is no need that the very action in question had been previously found unlawful. Safford Unified School Dist. No. 1 v. Redding, ___ U.S.___, 129 S. Ct. 2633 (2009); Brown v. Fortner, 518 F.3d 552, 561 (8th Cir. 2008). Thus, although there was no Eighth Circuit precedent addressing substantive due process claims filed by an employee injured in the line of duty at the time Fields was injured in 2004, the court can look to the case law outside the facts in this particular case to determine whether the standard was clearly established. In doing so, it is clear that the state-created danger exception was being applied to situations where the state was believed to have acted affirmatively in creating a dangerous condition. DeShaney, 489 U.S. 189 (setting forth language creating the state-created danger exception). Further, it was established that deliberate indifference in subjecting an individual to such a known and obvious danger fulfilled the substantive due process standard. County of Sacramento v. Lewis, 523 U.S. 833 (1998) (deliberate indifference, an intermediate level of culpability, can support the substantive due process threshold when there is evidence that

actual deliberation by the state is practical). Based on this sufficiently similar precedent, and considering the facts in the light most favorable to Fields, this court finds that the unlawfulness of Miller County defendants' conduct would have been apparent. This court finds that a reasonable Miller County Sheriff and reasonable County Commissioners would have reasonably understood the known and obvious dangers of having an interior door handle inside a drunk-tank cell, having a significantly understaffed jail, and having no classification of the jail's inmates, could, in their totality, support a claim that the Miller County Jail was deliberately indifferent in subjecting its jailers, specifically Fields, to these conditions. Defendants were on notice that their actions in creating the dangerous conditions in the Miller County Jail created a risk of serious harm to Fields and the jail staff, and therefore, could violate Fields' substantive due process rights as protected under the Fourteenth Amendment.

## Negligence Claims

*Wright County and Sheriff Gates.*

Fields also claims defendants Wright County and Sheriff Gates acted negligently in the transfer of inmate Arnold from the Wright County Jail to the Miller County Jail. Fields claims that Wright County and Sheriff Gates breached the duty of care owed to Fields and other employees of the Miller County Jail when Arnold was transferred to the Miller County Jail instead of a Department of Corrections facility after his parole violation. Fields claims that because of Arnold's violent criminal history and because his pending charges related to drugs and a weapon, that Wright County was negligent in transferring Arnold to Miller County. Fields also claims that Wright County defendants breached a duty of care when they failed to warn the Miller County Sheriff's Department as to the violent and dangerous propensities of Arnold, specifically his criminal history. Fields alleges that Wright County defendants' actions involved an unreasonable risk of causing injury to jailers, and that as a proximate result of Wright County defendants' negligence, Fields was injured by inmate Arnold. Defendants Wright County and Sheriff Gates assert sovereign and official immunity defenses.

<u>Sovereign Immunity--Dangerous Condition of Property</u>

Absent an express waiver, sovereign immunity protects defendant Wright County and the official capacity claims against Sheriff Gates. <u>State ex rel. Div. of Motor Carrier and R.R. Safety v. Russell</u>, 91 S.W.3d 612, 615 (Mo. 2002). <u>See also</u> <u>Batchel v. Miller County Nursing Home Dist.</u>, 110 S.W.3d 799, 804-05 (Mo. banc 2003). Here, Fields claims that dangerous-condition-of-property waiver to sovereign immunity applies. Pursuant to Mo. Rev. Stat. § 537.600, immunity is waived under the dangerous condition exception if: (1) the property was in dangerous condition; (2) the injury directly resulted from the dangerous condition; (3) the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury that was incurred; and (4) a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition. <u>Thomas v. Clay County Election Bd.</u>, 261 S.W.3d 574, 577-78 (Mo. App. W.D. 2008).

The claimed negligent acts of Wright County and Sheriff Gates in transferring inmate Arnold from Wright County Jail to Miller County Jail, instead of to the Department of Corrections on his parole violation warrant, do not fulfill the requirements for waiver of immunity under the dangerous-condition-of-property waiver. Fields was injured while working at Miller County Jail and was not at any time present, on, using, or involved with any property belonging to defendant Wright County. "Property," in context of exception to sovereign immunity which allows recovery for injuries resulting from dangerous condition of property, includes both real and personal property. <u>Alexander v. State</u>, 756 S.W.2d 539 (Mo. 1988). <u>See also</u> <u>Cain v. Missouri Highways and Transp. Com'n</u>, 239 S.W.3d 590, 594-95 (Mo. App. W.D. 2007). The claimed negligent acts by Wright County and Sheriff Gates involve no personal or real property of Wright County, and therefore, do not fall within the definition of property under the property-in-dangerous-condition exception. A dangerous condition under section 537.600 requires some defect, physical in nature, in the sovereign's property. <u>Thomas</u>, 261 S.W.3d at 576 (citing <u>State ex rel Div. of Motor Carrier and R.R. Safety</u>, 91 S.W.3d at 619. <u>See also</u> <u>Cain</u>, 239 S.W.3d at 594 (although items of property not intrinsically defective, the positioning of the property items was a dangerous condition). Further, the court notes the actions that injured

Fields were caused by inmate Arnold while at the Miller County Jail. Any property at issue would be Miller County, and moreover, the intervening action on the Miller County property was not that of any state or public employee, but that of an inmate. When intervening actions cause the dangerous condition of property, they cannot support waiver of sovereign immunity. See generally Cain at 593-96 (discussing when a dangerous condition to property should be used to waive sovereign immunity).

MOPERM and Waiver of Sovereign Immunity

The evidence does not support Fields' claim that Wright County's purchase of liability insurance constitutes a waiver of its sovereign immunity. Defendant Wright County is insured with the Missouri Public Entity Risk Management Fund (MOPERM), and MOPERMS's liability coverage agreement is structured to preserve the protections of sovereign immunity. See Epps v. City of Pine Lawn, 353 F.3d 588, 594-95 (8th Cir. 2003) (discussing MOPERM policy structure to preserve sovereign immunity). Specifically, the plain language of the insurance coverage extended by MOPERM to Wright County, as set forth in the Memorandum of Coverage, does not insure the county for any of its governmental functions except those involving the two statutory exceptions to sovereign immunity--the operation of motor vehicles and the dangerous condition of property. As set forth above, the alleged actions of Wright County and Sheriff Gates do not fall under the dangerous-condition exception, and the facts of this case do not involve a motor vehicle. Moreover, MOPERM's Memorandum of Coverage for Wright County states that it is not to "be construed to broaden the liability of the Member Agency beyond the provisions of sections 537.600 to 537.610 of the Missouri statutes, nor to abolish or waive any defense of law which might otherwise be available. . . ." (Doc. 184-13 at 4, Motion for Summary Judgment filed by Defendants Terry Gates and Wright County.) Because finding a county liable for torts is the exception to the general rule of sovereign immunity, a plaintiff must set forth facts with specificity that demonstrate his claims fall within the exception to sovereign immunity. Here, plaintiff presents no language of the MOPERM policy that specifically allows for coverage of the actions of Wright County or Sheriff Gates.

Plaintiff has failed to come forward with sufficient evidence to support a finding that Mo. Rev. Stat. §§ 537.600 or 537.610 waiver of sovereign immunity is applicable.

Official Immunity

Defendant Sheriff Gates asserts he is entitled official immunity on Fields' claims against him in his individual capacity. Official immunity is a judicially-created doctrine that protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts. Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. banc 2008). The official immunity doctrine, however, does not provide public employees immunity for torts committed when acting in a ministerial capacity. Id. Discretionary acts require the exercise of discretion in determining how or whether an act should be done. Id. A ministerial function, in contrast, is one of a clerical nature which a public officer is required to perform upon a given set of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed. Id. There is an exception to the application of official immunity to discretionary actions, however, when the evidence shows the conduct is willfully wrong or done with malice or corruption. Id.

Here, the evidence and the very nature of Fields' claims show that Sheriff Gates' action of transferring inmate Arnold from Wright County to Miller County, instead of taking Arnold to the Department of Corrections, was discretionary, and not ministerial. Although Sheriff Gates could have had inmate Arnold transferred to the Department of Corrections on the parole violation warrant, he was not required to do so by any state statute or regulation or by county policy. See Boever v. Special School Dist. of St. Louis County, 296 S.W.3d 487 (Mo. App. E.D. 2009) (individual's actions were discretionary where plaintiff failed to allege existence of statutory or regulatory duty governing such actions). Further, there are insufficient facts to support Fields' allegation that Sheriff Gates' failure to transfer inmate Arnold to the Department of Corrections was done in bad faith. Fields' expert's testimony provides opinion evidence of best practices in jail administration, but it does not show Sheriff Gates' actions in transferring inmate Arnold from the Wright County Jail to the Miller County Jail was willfully wrong or done with malice or corruption. Official immunity was created for the very purpose of protecting defendants like Sheriff Gates who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties. See id. at 491 (discussing purpose of the

15

immunity to protect government employees and allowing them to make judgments affecting public safety and welfare without concerns about possible personal liability).  This court finds that Sheriff Gates is entitled, as a matter of law, to official immunity on Fields' claims of negligence against Sheriff Gates in his individual capacity.

Conclusion

No genuine issue of a material fact exists on Fields' claims of negligence against Wright County and Sheriff Gates.  As a matter of law, Wright County and Sheriff Gates are entitled to sovereign immunity on plaintiff's state law negligence claims against Wright County and official capacity claims against Sheriff Gates.  As a matter of law, Sheriff Gates is also entitled to official immunity on Fields' negligence claims against him in his individual capacity.

Archetype Design Group, Inc.

Defendant Archetype Design Group, Inc., moves for summary judgment on Fields' claims that Archetype negligently installed a D-ring pull or loop pull-type door handle on the interior of the Miller County Jail drunk-tank cell allowing Miller County inmates Arnold and Reynolds to gain control of the drunk-tank cell door on July 21, 2004, and take Fields hostage.  Archetype seeks summary judgment under the "accepted work doctrine."  Fields claims that Miller County relied on Archetype's expertise in jail design and that Archetype's design was imminently dangerous; therefore, making the accepted work doctrine inapplicable.

Under Missouri law, after an owner accepts a structure, the general rule is that a general contractor is not liable for injuries occurring to third persons.  Bloemer v. Art Welding Co., Inc., 884 S.W.2d 55, 58 (Mo. App. E.D. 1994) (citing Gast v. Shell Oil Co., 819 S.W.2d 367, 370 (Mo. banc 1991)).  An exception to this general rule is recognized only when the following factors are present:  (1) the defective construction is so defectively constructed as to be essentially and imminently dangerous to the safety of others; (2) the defects are known to the contractor; and (3) defects are so hidden and concealed that a reasonable and careful inspection by the owner accepting the work would not disclose these things.  Id. (both cases noting the factors set forth by the Missouri Supreme Court in Begley v. Adaber Realty and Inv. Co., 358 S.W.2d 785 (Mo. 1962)).

The evidence here is that Miller County accepted the jail in July 1998 by certificate of substantial completion signed by the County, Archetype, and the construction manager, followed by one year in which warranty work would still be performed by Archetype. There is no evidence that the placement of the interior cell door handle was contrary to the requests and specifications of Miller County to Archetype. Additionally, even after installed, accepted, the expiration of the one-year warranty, and many years of use of the drunk-tank cell door by Miller County, Miller County never requested the drunk-tank cell door's interior handle be changed by Archetype or anyone else, until after the incident of July 21, 2004, when Fields was injured. Thus, as to factor one, there is insufficient evidence to find that the door handle was defective.

But even assuming that the door handle was defective, there is insufficient evidence to support a finding that the door posed an imminent danger to others. The incidents in February 2004, and on July 21, 2004, involving the drunk tank's interior cell door handle, occurred approximately six years after Miller County accepted Archetype's work at the Miller County Jail.

Finally, even assuming that the handle on the drunk-tank cell door was defective, and posed an imminent danger to others, Fields has come forward with insufficient evidence to show that the defect was not detectible upon careful inspection by Miller County officials. A door handle on a regularly used jail cell door cannot be said to be a defect that is hidden from view. Cf. Rogers v. Frank C. Mitchell Co., 908 S.W.2d 387 (Mo. App. E.D. 1995) (exception to "accepted work doctrine" applied where contractor's defect was underground and hidden from the city's view when the contractor's work was accepted); Begley, 358 S.W.2d at 785 (contractor liable where the ductwork installed in supermarket ceiling was concealed and defective such that the contractor should have known of the defect). Moreover, the very nature of a door handle and its use, whether on the inside or outside of a jail cell, precludes a finding that the risks or dangers posed by the door handle were concealed from Miller County and its employees. Fields' claim that Miller County did not have the expertise to know that the door handle was defective is contrary to common sense and the evidence in this case showing that Fields and other jailers had previously complained that the interior drunk-tank cell door handle would allow inmates to get control of the door from inside the cell. There is insufficient evidence from which a reasonable jury could find that Miller County or its employees would not have known that an interior cell

door handle would allow whoever was inside the drunk-tank cell, whether it be an employee or an inmate, to open the cell door from the inside.

Therefore, for the reasons set forth above, this court finds there is no evidentiary basis for a reasonable jury to find that the exception to the "acceptance of work" doctrine to be applicable to Fields' claims. Archetype is entitled to judgment as a matter of law on Fields' negligence claims.

## Conclusion

In taking the evidence in the light most favorable to Fields, this court finds there are no genuine issues of material fact with regard to Fields' negligence claims against Archetype Design, Inc., and Wright County and Sheriff Gates; nor Fields' substantive due process claims against Wright County and Sheriff Gates. Therefore, because no reasonable juror could find that the evidence could support Fields' legal claims for relief, defendants' motions seeking summary judgment should be granted on these claims.

Fields' only claim with sufficient evidence to proceed to trial is her substantive due process claim against Miller County and Miller County defendants Sheriff Bill Abbott, Johnny Klindt, David Whittle, Tom Wright.

IT IS, THEREFORE, ORDERED that the motions of defendants Wright County, Sheriff Gates, and Archetype Design, Inc., for summary judgment are granted. [183, 188] It is further

ORDERED that the motion of defendants Miller County, Sheriff Bill Abbott, Johnny Klindt, David Whittle, Tom Wright for summary judgment is denied. [185] It is further

ORDERED that the motion in limine of Wright County and Sheriff Gates, and Fields' motion to continue response to the motion in limine are denied as moot. [226, 228]

Dated this 6th day of August, 2010, at Jefferson City, Missouri.


/s/ *Matt J. Whitworth*

MATT J. WHITWORTH
United States Magistrate Judge